**UNITED STATES, Appellee,**

v.

**Ernesto QUINTIERI, Defendant,**

**Carlo Donato, Defendant–Appellant.**

**Docket No. 01–1013.**

United States Court of Appeals, Second Circuit.

Submitted: Feb. 11, 2002.

Decided: Oct. 9, 2002.

Michael Cornacchia, Assistant United States Attorney (Alan Vinegrad, United States Attorney for the Eastern District of New York, Emily Berger, of counsel), Brooklyn, NY, for Appellee.

Carlo Donato, pro se, Lompoc, CA; Ruth M. Liebesman, New York, NY, for Defendant–Appellant.

Before: WALKER, Chief Judge, SACK, and B.D. PARKER, Circuit Judges.

SACK, Circuit Judge.

The defendant-appellant Carlo Donato was resentenced by the United States District Court for the Eastern District of New York (Jacob Mishler, *Judge*) upon remand after a decision of this court vacating his first sentence. Donato appeals on a variety of grounds. In order to decide this appeal, we must address knotty questions that emerge when an appeal results in a remand for resentencing. The difficulty arises largely from the apparent tension

between the view, adverted to in *United States v. Atehortva*, 69 F.3d 679, 685 (2d Cir.1995), *cert. denied sub nom. Correa v. United States*, 517 U.S. 1249, 116 S.Ct. 2510, 135 L.Ed.2d 199 (1996), that resentencing should proceed *de novo* unless the remand "specifically limit[s] the scope of resentencing," and our conclusion in *United States v. Stanley*, 54 F.3d 103, 108 (2d Cir.), *cert. denied*, 516 U.S. 891, 116 S.Ct. 238, 133 L.Ed.2d 166 (1995), that resentencing is limited, not *de novo*, when the remanding court identifies a sentencing error and remands for correction of that error but does not explicitly limit the scope of the remand. If the former view prevails in the case before us, the district court was required to resentence Donato *de novo* and we must hear on appeal every issue raised at resentencing so long as we have not previously decided it. If the latter applies, then the remand was limited and, under the doctrine of the law of the case, the district court should not have considered those issues, if any, that Donato previously waived or that we previously decided.

Donato appeals from the sentence imposed on him by the district court following our remand of the case for resentencing because it appeared that, at Donato's first sentencing, "double counting" may have improperly increased his offense level on one count. On remand, the district court concluded that it had indeed improperly increased Donato's offense level and, accordingly, reduced his sentence. The defendant argues on appeal: (1) through counsel, (a) that the district court was required to hold a hearing to determine whether he was competent to be resentenced, (b) that the district court was re-

quired to order a new presentence investigation report ("PSR") before resentencing him, (c) that the district court improperly failed to consider the required factors before ordering restitution and a fine, and (d) that the amount of the fine was in error; and (2) *pro se*, (a) that the district court improperly failed to consider his motion for a downward departure, and (b) that his sentence violates the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Eighth Amendment to the Constitution, and § 2K2.4 of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").

As the government concedes, the district court erred when it imposed a fine above the amount prescribed by the Guidelines without explaining its reasons for a departure. We conclude that all of Donato's other arguments are either barred by the law of the case or without merit.

## BACKGROUND

In separate incidents in 1993 and 1994, Donato carjacked three Mercedes Benz and three BMW vehicles, each time threatening his victim with a gun. For these robberies, a jury convicted Donato in 1996 of one count of conspiracy to commit carjacking in violation of 18 U.S.C. § 371, six counts of carjacking in violation of 18 U.S.C. § 2119, and six counts of using a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). Based on a combined total offense level of thirty-two and a criminal history category of II, the district court sentenced Donato to 168 months' (fourteen years') imprisonment on the one count of conspiracy to commit carjacking and the six substantive carjacking counts.[1] Donato was also sen-

---

1. Donato's combined total offense level for the one count of carjacking conspiracy and the six counts of carjacking was calculated pursuant to U.S.S.G. §§ 3D1.1(a) and 3D1.4, which provide for the calculation of a com-

bined offense level by taking the offense level applicable to the count with the highest offense level and then adding levels to reflect the existence of multiple counts. The PSR determined that the conspiracy count had the

tenced to 105 years on the firearm counts, five years for the first count and twenty years for each subsequent count pursuant to 18 U.S.C. § 924(c)(1), as then in effect, to be served consecutively to each other and to the carjacking sentence. The defendant's aggregate prison term was therefore 119 years. He was also ordered to serve three years of supervised release [2] and to pay a $175,000 fine and $295,807.25 in restitution.

On April 23, 1997, we affirmed Donato's convictions in an unpublished order. *United States v. Donato*, 112 F.3d 506 (table), No. 96–1547, 1997 WL 196593, 1997 U.S.App. LEXIS 8094 (2d Cir.1997) (*"Donato I"*). In March 1998, Donato brought a *pro se* motion to set aside his conviction and sentence pursuant to 28 U.S.C. § 2255. The district court denied this motion but granted a certificate of appealability. We appointed counsel, received briefing, and heard oral argument, most of it related to assertions of ineffective assistance of counsel on various grounds. *See Donato v. United States*, 208 F.3d 202 (table), No. 98–2991, 2000 WL 268593, 2000 U.S.App. LEXIS 3788 (2d Cir.) (*"Donato II"*), *cert. denied*, 531 U.S. 899, 121 S.Ct. 233, 148 L.Ed.2d 167 (2000). In an unpublished order dated March 7, 2000, we decided that all but one of Donato's arguments were without merit. *Id.* With respect to that one argument, we concluded that "there may have been improper double counting if the district court

[had] increased the offense level for the conspiracy count" under U.S.S.G. § 2B3.1(b)(2)(C) for possession of a firearm and then also sentenced the defendant to a consecutive sentence under § 924(c) for the same firearm possession. *Id.* at *3, 2000 U.S.App. LEXIS 3788, at *7–*9. We therefore "remand[ed] to the district court for resentencing in light of [that] order, without prejudice to the government submitting an argument to the district court explaining why this was not double-counting." *Id.* at *3, 2000 U.S.App. LEXIS 3788, at *9.

On remand, after consultation with the probation department, the government conceded that Donato's combined total offense level on the conspiracy count had been improperly enhanced as a result of "double counting." The government told the court that Donato's combined total offense level on the conspiracy count and the carjacking counts should therefore have been twenty-nine, not thirty-two. Donato's combined total offense level for these counts would then have to have been recalculated pursuant to the grouping provisions contained in U.S.S.G. §§ 3D1.1(a) and 3D1.4, which provide for the calculation of a combined offense level by taking the offense level applicable to the count with the highest offense level and then adding levels to account for the fact that multiple counts are involved. At the original sentencing, according to the PSR, the

highest offense level—twenty-seven. This level was calculated by enhancing the base offense level of twenty, U.S.S.G. §§ 2B3.1(a) and 2X1.1(a), by two levels because the conspiracy involved carjacking, § 2B3.1(b)(5), and then by five more levels because of possession of a firearm, § 2B3.1(b)(2)(C). A combined total offense level of thirty-two for all counts was then reached by adding five levels to account for Donato's more than five additional separate crimes, each with offense levels no more than four levels below that of the conspiracy offense. U.S.S.G. § 3D1.4.

Because his criminal history category was II, the applicable Guideline range was 135 to 168 months.

**2.** Cognizant of the fact that Donato was unlikely to serve supervised release after completing his 119–year prison sentence, the district court nonetheless ordered a period of supervised release in anticipation of the possibility of a change in the law regarding deportation of incarcerated felons to which the imposition of supervised release might be relevant.

conspiracy count had the highest offense level. But after removing the improper enhancement for possession of a firearm, that was no longer the case. One of the substantive counts for carjacking now had the highest offense level—twenty-four. This level was calculated by enhancing the base offense level of twenty, U.S.S.G. § 2B3.1(a), by two levels because the robbery involved carjacking, § 2B3.1(b)(5), and then by two more levels because the loss amount was more than $50,000, § 2B3.1(b)(7)(C). The government then arrived at a combined total offense level of twenty-nine for all seven convictions by adding five additional levels to account for Donato's additional six crimes with offense levels within four levels of the carjacking count with the highest offense level. *See* U.S.S.G. § 3D1.4(a).[3] Because Donato's criminal history category was II, the applicable Guideline range for the conspiracy and carjacking counts was now 97 to 121 months. As before, this sentence would run consecutively to the 105–year prison term on the firearm counts.[4]

At the resentencing hearing on December 1, 2000, defense counsel "concurred" in the government's sentencing analysis but asked the court to downwardly depart for post-conviction rehabilitation. Defense counsel also asked the court to consider Donato's *pro se* sentencing memorandum that argued that his sentence violates the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The district court denied the application for a downward departure and rejected Donato's *Apprendi* arguments.

When asked if he wished to make a statement, Donato said that he felt "dizzy" and was not well enough to be at the hearing because his psychiatric medications had been "mix[ed] up" the previous day. Hr'g Tr. of Dec. 1, 2000, at 4. Defense counsel stated that based on three conversations with Donato the previous day and a review of his medical records, she thought that while he did not "feel[ ] well" he was nonetheless "lucid and able to continue with the sentencing." *Id.* at 5. Defense counsel also reported that Donato "[was] well oriented as to time and place and fully underst[ood] the purpose of [the] procedure." *Id.* No one present at the resentencing hearing requested a competency hearing.

The district court then resentenced Donato to the same term as it had the first time, except that to correct for the "double counting," the court reduced Donato's sentence on the conspiracy and carjacking counts to 120 months (ten years)—one month shy of the top of the sentencing range. He therefore received an aggregate prison sentence of 115 years—ten years for conspiracy and carjacking plus 105 years for the firearm offenses. Additionally, the court sentenced him to three

3. For purposes of § 3D1.4(a), the defendant committed six not seven separate crimes because his conviction on the conspiracy count was grouped with his conviction on one of the substantive counts of carjacking. *See* U.S.S.G. § 3D1.2(b), cmt. n. 4. Under § 3D1.4(a), the six crimes required the court to assess six "units," which, under that section, in turn called for the five-level enhancement.

4. Pursuant to U.S.S.G. § 2K2.4(a)(2), Donato was sentenced originally and at the resentenc-

ing to the minimum term of imprisonment required by 18 U.S.C. § 924(c). At the time he committed the firearm offenses, § 924(c) provided for a mandatory minimum sentence of five years for the first conviction and a mandatory minimum sentence of twenty years for each subsequent conviction. Donato was therefore sentenced to five years on the first firearm count and twenty years on each of the five other firearm counts. In accordance with U.S.S.G. § 5G1.2(a), these sentences all run consecutively to each other and to the carjacking sentence.

years' supervised release, a $175,000 fine, and $295,807.25 in restitution.

This appeal followed.

## DISCUSSION

### I. The Issues Properly Before Us

As noted, the issues Donato raises on appeal are: (1) through counsel, (a) whether the district court was required to hold a hearing to determine whether he was competent to be resentenced, (b) whether the district court was required to order a new PSR before resentencing him, (c) whether the district court improperly failed to consider the required factors before ordering restitution and a fine, and (d) whether the amount of the fine was in error; and (2) *pro se*, (a) whether the district court improperly failed to consider his motion for a downward departure, and (b) whether his sentence violates the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Eighth Amendment to the Constitution, or U.S.S.G. § 2K2.4. The threshold question is which of these arguments, if any, are properly before us and not barred by the law of the case doctrine.

 The law of the case doctrine has two branches. The first requires a trial court to follow an appellate court's previous ruling on an issue in the same case. *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir.1991) (citing *United States v. Cirami*, 563 F.2d 26, 32 (2d Cir.1977)). This is the so-called "mandate rule." [5] *United States v. Tenzer*, 213 F.3d 34, 39–40 (2d Cir.2000). The second and more flexible branch is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court. It holds "that when a court has ruled on an issue, that

decision should generally be adhered to by that court in subsequent stages in the same case," *Uccio*, 940 F.2d at 758, unless "cogent" and "compelling" reasons militate otherwise, *Tenzer*, 213 F.3d at 39.

 The "mandate rule" ordinarily forecloses relitigation of all issues previously waived by the defendant or decided by the appellate court. But when a case is remanded for *de novo* resentencing, the defendant may raise in the district court and, if properly preserved there, on appeal to the court of appeals, issues that he or she had previously waived by failing to raise them. *See United States v. Stanley*, 54 F.3d 103, 107 (2d Cir.) ("*Stanley II*"), *cert. denied*, 516 U.S. 891, 116 S.Ct. 238, 133 L.Ed.2d 166 (1995).

Donato seeks to raise some issues that he waived by not raising them during his initial sentencing proceedings or on his previous appeal. We must therefore determine at the outset whether Donato's case was remanded for *de novo* or for limited resentencing. We conclude that in this case, because we identified a particular sentencing issue necessitating remand—whether Donato's total offense level on the conspiracy count was improperly enhanced as a result of "double counting"—the remand was limited, not *de novo*. Because the remand was limited, Donato may not now raise arguments that he had an incentive and an opportunity to raise previously but did not raise, absent a cogent and compelling reason for permitting him to do so.

### A. Whether Donato's Resentencing Was De Novo

 When Donato's case was last before us, we remanded it to the district court for resentencing because we had

---

5. Technically, the "mandate" of this Court consists of a "certified copy of [our] judgment, a copy of the opinion, and any direction as to costs." *United States v. Reyes,* 49 F.3d 63, 66 (2d Cir.1995).

identified a possible sentencing error— "double counting." *Donato II*, 2000 WL 268593, at \*3, 2000 U.S.App. LEXIS 3788, at \*8–\*9.. Specifically, we stated:

> [T]here may have been improper double counting if the district court increased the offense level for the conspiracy count because of the firearm possession charged as an overt act in Count One, and then sentenced Donato to a five-year consecutive sentence under section 924(c) for the use and possession of a firearm during the commission of the carjacking charged in Count Two. *We therefore remand to the district court for resentencing in light of this order*, without prejudice to the government submitting an argument to the district court explaining why this was not double-counting.
>
> *We have considered Donato's other claims and find them to be without merit.*
>
> The judgment of the district court is hereby AFFIRMED in part and RE-MANDED in part.

*Id.* (emphasis added). This remand order neither explicitly stated that the sole issue on remand was whether "double counting" affected Donato's sentence on the conspiracy count, nor indicated that we intended a *de novo* resentencing or were leaving any issues open for the district court's further consideration other than whether "double counting" improperly affected Donato's total offense level.

In *Stanley II*, we held that a similar mandate did not allow for *de novo* resentencing. 54 F.3d at 108. On a preceding appeal in that case, *United States v. Stanley*, 12 F.3d 17 (2d Cir.1993) ("*Stanley I* "), *cert. denied*, 511 U.S. 1044, 114 S.Ct. 1572, 128 L.Ed.2d 216 (1994), we had remanded for resentencing because the district court had failed to make sufficient factual findings to support its loss calculation and thereby may have improperly increased

the offense level. *Id.* at 21. In explaining our mandate, we said:

> In sum, *because* the district court failed to indicate whether its loss calculation was based on actual or intended loss, and failed to make sufficient factual findings supporting either calculation, *we remand for resentencing.* If upon reconsideration, the district court's sentencing calculation results in a determination of loss different from that originally found, the district court may wish to also recalculate the amount of restitution and make findings as to that issue. *We have examined Stanley's remaining contentions regarding his sentence and find them to be without merit.*

## CONCLUSION

Based on the foregoing, we affirm defendant's conviction, but *vacate and remand this case for further sentencing proceedings consistent with this opinion.*

*Id.* (emphasis added). On appeal after remand and resentencing, we read our original mandate as effecting a limited remand on the sole issue of whether the loss amount was properly calculated. We concluded that the mandate of the *Stanley I* panel "did not call for *de novo* resentencing. Instead, we identified a narrow issue for remand ...." *Stanley II*, 54 F.3d at 108. We therefore held that the defendant was barred by the law of the case's "mandate rule" from challenging a two-level upward adjustment to his offense level for more than minimal planning and multiple victims that had been imposed at his original sentencing, because the defendant had failed to challenge these adjustments in his first appeal. *Id.* at 107–08. To support this conclusion, we cited *United States v. Bell*, 988 F.2d 247, 250 (1st Cir.1993), for the proposition that "where [an] appellate court vacates a sentence and remands for

consideration of a specific issue, [the] mandate rule prevents [the] district court from hearing an issue not raised on the initial appeal." *Stanley II,* 54 F.3d at 107 (citing *Bell,* 988 F.2d at 250).

■ Our remand order in *Donato II* does not differ in any material respect from the remand order in *Stanley I.* Both identified a specific sentencing error, remanded because of that error, and decided that all other claims were without merit. We therefore conclude that the remand in *Donato II* was not for *de novo* resentencing and that accordingly Donato may not now raise arguments that he waived by not making them on his previous appeal. This holding is consistent with our repeated statement that to determine whether a remand is *de novo,* we must "look to both the specific dictates of the remand order as well as the broader 'spirit of the mandate.'" *United States v. Ben Zvi,* 242 F.3d 89, 95 (2d Cir.2001) (citation omitted); *accord United States v. Bryce,* 287 F.3d 249, 253 (2d Cir.2002). To allow for *de novo* sentencing in cases like *Stanley I* and *Donato II* would contradict the "spirit of the mandate"—directing the district court to correct an error or possible error that we had identified in the sentencing—even if the mandate does not expressly state that the resentencing will be limited.

At first glance, a decision of ours handed down several months after *Stanley II, United States v. Atehortva,* 69 F.3d 679 (2d Cir.1995) ("*Atehortva*"), *cert. denied sub nom. Correa v. United States,* 517 U.S. 1249, 116 S.Ct. 2510, 135 L.Ed.2d 199 (1996), seems to cast some doubt on that conclusion. The defendant-appellant in *Atehortva* had been convicted on three separate counts, two of which were vacated on a first appeal. *United States v. Atehortva,* 17 F.3d 546, 552 (2d Cir.1994). We simply "remanded ... for sentencing," explaining only that "we [did not] need [to] address the sentencing issues ... since the

case [had to be] remanded to the district court for resentencing." *Id.* On remand, the district court upwardly departed from the Guideline range even though it had not upwardly departed during the original sentencing. *Atehortva,* 69 F.3d at 683. We upheld this upward departure, concluding that:

> [B]ecause the resentencing was based on a different set of circumstances, the court was free to consider grounds for departure it had not contemplated in the first sentencing proceeding. That is, the resentencing proceeding was appropriately treated as a *de novo* sentencing, for the remand did not specifically limit the scope of resentencing.

*Id.* at 685. This seems to suggest that sentencing must proceed *de novo* unless a court "specifically limit[s] the scope of resentencing."

But *Atehortva's* holding is properly limited to cases where one or more convictions have been vacated and we have remanded for resentencing on the remaining counts. In *Atehortva,* we explained:

> When a defendant challenges *convictions on particular counts* that are inextricably tied to other counts in determining the sentencing range under the guidelines, the defendant assumes the risk of undoing the intricate knot of calculations should he succeed. Once this knot is undone, the district court must sentence the defendant *de novo* ....

*Id.* at 685–86 (citation omitted; emphasis added). A district court's sentence is based on the constellation of offenses for which the defendant was convicted and their relationship to a mosaic of facts, including the circumstances of the crimes, their relationship to one another, and other relevant behavior of the defendant. When the conviction on one or more charges is overturned on appeal and the case is remanded for resentencing, the constellation of offenses of conviction has

been changed and the factual mosaic related to those offenses that the district court must consult to determine the appropriate sentence is likely altered. For the district court to sentence the defendant accurately and appropriately, it must confront the offenses of conviction and facts anew. The offenses and facts as they were related at the first sentence may, by then, have little remaining significance. The "spirit of the mandate" in such circumstances is therefore likely to require *de novo* resentencing. *See Bryce,* 287 F.3d at 252–54 (holding that resentencing properly proceeded *de novo* after one of two convictions was vacated and the district court was presented with important evidence that was not previously available); *United States v. Morales,* 185 F.3d 74, 85 (2d Cir.1999) (citing *Atehortva* and requiring *de novo* resentencing "[b]ecause the sentences imposed on the reversed and remaining counts are or may be interdependent"), *cert. denied,*

529 U.S. 1010, 120 S.Ct. 1282, 146 L.Ed.2d 229 (2000). In contrast, resentencing to correct specific sentencing errors does not ordinarily undo the entire "knot of calculation."

That resentencing usually should be *de novo* when a Court of Appeals reverses one or more *convictions* and remands for resentencing, then, does not deviate from the rule applied in *Stanley II* that absent explicit language in the mandate to the contrary, resentencing should be limited when the Court of Appeals upholds the underlying convictions but determines that a *sentence* has been erroneously imposed and remands to correct that error. To be sure, there may be circumstances when we reverse a sentence in which the "spirit of the mandate" requires *de novo* sentencing, for example when the reversal effectively undoes the entire "knot of calculation," but this is not such a case.[6]

---

**6.** The circuits are divided as to whether a remand for resentencing should be limited or *de novo* absent explicit direction from the remanding court. The Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits follow a *de novo* sentencing default rule. *See United States v. Jennings,* 83 F.3d 145, 151 (6th Cir.) (creating a default rule of *de novo* resentencing), *amended by* 96 F.3d 799 (6th Cir.), *cert. denied sub nom. Stepp v. United States,* 519 U.S. 975, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996); *United States v. Cornelius,* 968 F.2d 703, 705–06 (8th Cir.1992) (same); *United States v. Ponce,* 51 F.3d 820, 826 (9th Cir. 1995) (same); *United States v. Smith,* 930 F.2d 1450, 1456 (10th Cir.) (same), *cert. denied,* 502 U.S. 879, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *United States v. Stinson,* 97 F.3d 466, 469 (11th Cir.1996) ("Under [a] holistic approach, when a criminal sentence is vacated, it becomes void in its entirety; the sentence—including any enhancements—has been wholly nullified and the slate wiped clean. Consequently, ... the district court is free to reconstruct the sentence utilizing any of the sentence components." (citations and internal quotation marks omitted)), *cert. denied,* 519 U.S. 1137, 117 S.Ct. 1007, 136 L.Ed.2d 885 (1997).

The D.C., First, Fifth, and Seventh Circuits follow a default rule of limited resentencing. *See United States v. Whren,* 111 F.3d 956, 960 (D.C.Cir.1997) ("[U]pon a resentencing occasioned by a remand, unless the court of appeals expressly directs otherwise, the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision—whether by the reasoning or by the result."), *cert. denied,* 522 U.S. 1119, 118 S.Ct. 1059, 140 L.Ed.2d 120 (1998); *United States v. Ticchiarelli,* 171 F.3d 24, 32 (1st Cir.) (same), *cert. denied sub nom. Bowen v. United States,* 528 U.S. 850, 120 S.Ct. 129, 145 L.Ed.2d 109 (1999); *United States v. Marmolejo,* 139 F.3d 528, 530–31 (5th Cir.) (same), *cert. denied,* 525 U.S. 1056, 119 S.Ct. 622, 142 L.Ed.2d 561 (1998); *United States v. Parker,* 101 F.3d 527, 528 (7th Cir.1996) (same), *cert. denied,* 522 U.S. 1119, 118 S.Ct. 1059, 140 L.Ed.2d 120 (1998); *United States v. Ticchiarelli,* 171 F.3d 24, 32 (1st Cir.) (same), *cert. denied sub nom., Bowen v. United States,* 528 U.S. 850, 120 S.Ct. 129, 145 L.Ed.2d 109 (1999); *United States v. Marmolejo,* 139 F.3d 528, 530–31 (5th Cir.) (same), *cert. denied,* 525 U.S. 1056, 119 S.Ct. 622, 142 L.Ed.2d 561 (1998); *United States v. Parker,* 101 F.3d 527, 528 (7th Cir.1996) (same).

## B. The Implications of a Limited Remand

 Applying these principles, the remand in this case was limited to the issue of "double counting." The law of the case doctrine therefore dictates what issues may be raised in the district court and on any subsequent appeal. *See Stanley II*, 54 F.3d at 107. The law of the case ordinarily "forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Ben Zvi*, 242 F.3d at 95 (citations, internal quotation marks, and emphasis omitted). And "where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone," it is considered waived and the law of the case doctrine bars the district court on remand and an appellate court in a subsequent appeal from reopening such issues "unless the mandate can reasonably be understood as permitting it to do so." [7] *Id.* (citations omitted). We have explained that " 'it would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.' " *Id.* at 96 (quoting *County of Suffolk v. Stone & Webster Eng'g Corp.*, 106 F.3d 1112, 1117 (2d Cir.1997)). For similar reasons, we conclude that the law of the case ordinarily prohibits a party, upon resentencing or an appeal from that resentencing, from raising issues that he or she waived by not litigating them at the time of the initial sentencing.

 An issue is not considered waived, however, if a party did not, at the time of the purported waiver, have both an opportunity and an incentive to raise it before the sentencing court or on appeal. *See United States v. Ticchiarelli*, 171 F.3d 24, 32–33 (1st Cir.) ("Whether there is a waiver depends not ... on counting the number of missed opportunities ... to raise an issue, but on whether the party had sufficient incentive to raise the issue in the prior proceedings." (citation omitted)), *cert. denied sub nom. Bowen v. United States*, 528 U.S. 850, 120 S.Ct. 129, 145 L.Ed.2d 109 (1999); *United States v. Whren*, 111 F.3d 956, 960 (D.C.Cir.1997) ("A defendant should not be held to have waived an issue if he did not have a reason to raise it at his original sentencing ....."), *cert. denied*, 522 U.S. 1119, 118 S.Ct. 1059, 140 L.Ed.2d 120 (1998). Thus, if a sentencing determination had no practical effect on a defendant's sentence at the original sentencing but becomes relevant only after appellate review, a defendant is free

Today we conclude that when a resentencing results from a vacatur of a conviction, we in effect adhere to the *de novo* default rule of the Sixth, Eighth, Ninth, and Eleventh Circuit, because multiple convictions are "inextricably linked" in calculating the sentencing range under the guidelines. *Atehortva*, 69 F.3d at 685–86; *see also Bryce*, 287 F.3d at 253–54; *Morales*, 185 F.3d at 85. But when a resentencing is necessitated by one or more specific sentencing errors, unless correction of those errors would undo the sentencing calculation as a whole or the "spirit of the mandate" otherwise requires *de novo* resentencing, we in effect adhere to the First, Fifth, Seventh, and D.C. Circuit's default rule of limited resentencing. *See Stanley II*, 54 F.3d at 107–08.

7. Of course, an issue cannot be waived by failure to raise it on appeal unless it could have been raised on that appeal. For example, a district court's refusal to grant a discretionary downward departure is not appealable unless there is evidence in the record that the district court did not recognize its authority to depart downwardly. *United States v. Schmick*, 21 F.3d 11, 13 (2d Cir. 1994) (per curiam). Thus, it would be unfair to hold that defendants waived their opportunity to request a downward departure at resentencing by not raising the issue on their first appeal. But if the defendant chose not to request a downward departure when first sentenced, he or she waived the right to request such a departure at a subsequent sentencing based on any grounds available at the first sentencing.

to challenge that sentencing determination on remand, and ultimately on reappeal, despite the failure to challenge that determination initially. *See id.* at 960 (holding that the district court may consider issues "made newly relevant by the court of appeals' decision—whether by the reasoning or by the result"); *Ticchiarelli,* 171 F.3d at 32 (same, citing *Whren* ); *see also Atehortva,* 69 F.3d at 685 (noting that a failure to make an argument at the original sentencing cannot be viewed as a waiver if that argument would have then been "purely academic"). To deprive defendants of this ability, "would unnecessarily increase the burden on district courts and this court" because "defendants would be forced to litigate every aspect of the sentencing report in the original hearing, even though irrelevant to the immediate sentencing determination in anticipation of the possibility that, upon remand, the issue might be relevant." *United States v. Jennings,* 83 F.3d 145, 151 (6th Cir.), *amended by* 96 F.3d 799 (6th Cir.), *cert. denied sub nom. Stepp v. United States,* 519 U.S. 975, 117 S.Ct. 411, 136 L.Ed.2d 324 (1996).

 Furthermore, and importantly, even when a remand is limited, an issue may be raised if it arises as a result of events that occur after the original sentence. *See United States v. Bryson,* 229 F.3d 425, 426 (2d Cir.2000) (per curiam) (holding that even when the remanding opinion ordered resentencing at a specific offense level, the district court could depart from this level if there were "intervening circumstances"); *see also Werber v. United States,* 149 F.3d 172, 178 (2d Cir. 1998) (holding that the district court at resentencing must take into account changed circumstances). If, for example, a woman whose spouse cared for their young children is convicted of a crime, she might see little point in seeking a downward departure pursuant to § 5K2.0 of the Guidelines on the basis of extraordinary family circumstances. If, between her

first and second sentencing, her spouse were to die unexpectedly, however, we do not doubt that she could raise the issue of extraordinary family circumstances in a second sentencing following remand even though the remand was "limited" to a different issue. *See Bryson,* 229 F.3d at 426 (stating that extraordinary rehabilitation between the first and second sentencing cannot be ruled out as a possible ground for a downward departure during the second). This to some extent reflects the general admonition that "a court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." *Id.* (citation omitted).

 Finally, even if an issue is barred by the law of the case, appellate courts may depart from the law of the case and reconsider the issue for "cogent" and "compelling" reasons such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Tenzer,* 213 F.3d 34, 39 (2d Cir.2000) (citation and internal quotation marks omitted); *accord United States v. Minicone,* 994 F.2d 86, 89 (2d Cir.1993); *United States v. Lanese,* 937 F.2d 54, 57 (2d Cir.1991) (per curiam) (departing from the law of the case because of an intervening change in the controlling law). And despite the second branch of the law of the case doctrine, which holds that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case," *United States v. Uccio,* 940 F.2d 753, 758 (2d Cir.1991) (citation omitted), district courts may similarly depart from the law of the case and reconsider their own decisions for cogent and compelling reasons if those decisions have not been ruled on by the appellate court. *DiLaura v. Power Auth.,* 982 F.2d 73, 77 (2d Cir.1992) (citing *Doe v. N.Y. City Dep't of*

*Soc. Servs.,* 709 F.2d 782, 789 (2d Cir.), *cert. denied sub nom. Catholic Home Bureau v. Doe,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983)); *see also Minicone,* 994 F.2d at 89 ("[T]he trial court is 'barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals.'" (quoting *Uccio,* 940 F.2d at 757)).[8]

## C. Application of the Law of the Case to Donato's Limited Mandate

Several of the arguments Donato raises on appeal are barred by the law of the case.

■■■ Donato's argument that the district court failed to consider the required factors before imposing restitution and a fine is barred by the law of the case. To the extent that Donato challenges the procedure followed at the original sentencing, this argument is foreclosed because he had an incentive and an opportunity to challenge these procedures during his previous appeal but did not do so. And because the remand for resentencing was limited, the district court was barred from reconsidering the propriety of imposing restitution and a fine. Thus, the district court did not err at the resentencing by reimposing restitution and a fine without first reconsidering on the record the required factors.

■■■ Donato's assertions that his sentence violates the Eighth Amendment and the rule of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) are also barred by the law of the case and we see no compelling reason to consider these issues now. We need not decide whether *Apprendi,* which was decided after Donato's previous appeal, constitutes a significant enough change in the controlling law to allow us to depart from the law of the case because Donato's *Apprendi* arguments are utterly without merit. The jury found all the elements of the crimes for which Donato was convicted, his sentences do not exceed the statutory maximum for any of those crimes, and the jury was not required to find sentencing facts that only affected his Guideline range. *See United States v. Garcia,* 240 F.3d 180, 184 (2d Cir.) (holding that "a guideline factor, unrelated to a sentence above a statutory maximum or to a mandatory statutory minimum, may be determined by a sentencing judge and need not be submitted to a jury" (citations omitted)), *cert. denied,* 533 U.S. 960, 121 S.Ct. 2615, 150 L.Ed.2d 769 (2001).

[23] Finally, Donato's assertion that the district court violated U.S.S.G. § 2K2.4 by increasing his offense level on the carjacking and conspiracy counts to account for "special offense characteristics" is not properly before us because Donato did not make that assertion on his previous appeal even though the offense level on each of the carjacking and conspiracy counts had an impact on his sentence then. While at the original sentencing his combined total offense level for those counts was determined primarily based on his offense level for the conspiracy count, his offense level

---

8. Our discussion of which issues may be raised applies only to the resentencing proceeding (whether the resentencing results from a remand after direct appeal or from a successful § 2255 motion) in the district court and a subsequent direct appeal. Different concerns may govern whether a § 2255 motion following a resentencing is to be treated as a first or successive habeas petition. *See Galtieri v. United States,* 128 F.3d 33, 37–38 (2d Cir.1997) ("[W]henever a first 2255 peti-

tion succeeds in having a sentence amended, a subsequent 2255 petition will be regarded as a 'first' petition only to the extent that it seeks to vacate the new, amended component of the sentence, and will be regarded as a 'second' petition to the extent that it challenges the underlying conviction or seeks to vacate any component of the original sentence that was not amended."); *Esposito v. United States,* 135 F.3d 111, 113 (2d Cir.1997) (per curiam) (same).

on the carjacking counts affected his combined total offense level.[9] *See* U.S.S.G. § 3D1.4. Thus, having had both opportunity and incentive to mount this challenge the first time around and having failed to do so, Donato cannot do so now.

■ Four of Donato's arguments are not barred by the law of the case, however. Two of them—whether the district court should have held a hearing to determine whether Donato was mentally competent at the resentencing and whether the district court should have ordered a new PSR before resentencing him—arise from events that occurred after the last appeal and therefore are not barred. And to the extent that Donato argues that he should receive a downward departure for rehabilitation that occurred subsequent to his initial sentencing, this argument is similarly not barred because it is based on "intervening circumstances." *Bryson*, 229 F.3d at 426. To the extent Donato is arguing that he should receive a downward departure based on circumstances that existed at the time of the initial sentencing, these arguments are barred by the law of the case because he had an incentive and opportunity to request a downward departure at the original sentencing.

■ We also conclude that Donato's argument that the *amount* of the fine is in error is not barred by the law of the case. Pursuant to U.S.S.G. § 5E1.2, Donato's fine is determined based on his offense level. Because of the "double counting"—the correction of which was the purpose of the remand—Donato's offense level and consequently his fine was too high at the

first sentencing. We think that correcting the amount of the fine, after correcting the offense level on which it was based, was well within the limitation placed on the remand.

We will therefore now consider the four arguments properly before us.

## II. Procedural Competency

### A. Legal Standard

■■ . "It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) (citations omitted); *see also Godinez v. Moran*, 509 U.S. 389, 403, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) (Kennedy, J., concurring) ("the due process clause does not mandate different standards of competency at various stages of or for different decisions made during the criminal proceedings"). To protect this right, 18 U.S.C. § 4241(a) requires the district court to order a hearing *sua sponte* to determine the mental competence of a defendant "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." § 4241(a); *see also United States v. Auen*, 846 F.2d 872, 877 (2d Cir.1988); *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir.1986). A district

---

**9.** U.S.S.G. § 3D1.4(a) provides for the increase of the combined offense level by one point for each count with an offense level "equally serious [to] or from 1 to 4 levels less serious" than the count with the highest offense level. But the combined offense level is only increased by one-half a level if the offense level is "5 to 8 levels less serious than

the Group with the highest offense level." § 3D1.4(b). If Donato had successfully challenged the enhancements for "specific offense characteristics" at the original sentencing, each carjacking count would have increased the combined offense level by one-half instead of one offense level.

court's determination that "reasonable cause" to hold a competency hearing is absent is reviewed only for abuse of discretion. *Auen*, 846 F.2d at 877; *Vamos*, 797 F.2d at 1150.

■■■■ "There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed ...." *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). A district court must consider many factors when determining whether it has "reasonable cause" to order a competency hearing. *Id.* The district court's own observations of the defendant's demeanor during the proceeding are relevant to the court's determination, but the court's observations alone "cannot be relied upon to dispense with a hearing on that very issue" if there is substantial other evidence that the defendant is incompetent. *Pate v. Robinson*, 383 U.S. 375, 386, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *see also Vamos*, 797 F.2d at 1150 ("[D]eference is owed to the district court's determinations based on observation of the defendant during the proceedings."). And while a defendant may be found incompetent even when his attorney asserts that he is competent, *United States v. Hemsi*, 901 F.2d 293, 294–96 (2d Cir. 1990), "[a] failure by trial counsel to indicate that the defendant had any difficulty assisting in preparation or in comprehending the nature of the proceedings 'provides substantial evidence of the defendant's competence.'" *United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir.) (quoting *Vamos*, 797 F.2d at 1150), *cert. denied*, 516 U.S. 927, 116 S.Ct. 330, 133 L.Ed.2d 230 (1995); *see also Drope*, 420 U.S. at 177 n. 13, 95 S.Ct. 896 (recognizing the importance of considering counsel's judgment about the defendant's state of mind). A district court also often orders and reviews psychiatric records when determining whether to hold a hearing. *See, e.g., Vamos*, 797 F.2d at 1150–51.

## B. *Analysis*

■■■■ Donato, through counsel, contends that the district court should have held a hearing to determine his competence after he complained that he felt dizzy because prison officials administered the wrong psychiatric medication. Certainly, the improper administration of psychiatric medicine can render an individual temporarily incompetent. *Riggins v. Nevada*, 504 U.S. 127, 137, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992); *id.* at 143–44, 112 S.Ct. 1810 (Kennedy, J., concurring) ("[S]erious prejudice could result if medication inhibits the defendant's capacity to react and respond to the proceedings and to demonstrate remorse or compassion. The prejudice can be acute during the sentencing phase of the proceedings ...."); *McGregor v. Gibson*, 248 F.3d 946, 956–58 (10th Cir.2001) (in banc) (finding the defendant incompetent in part because he had received improper medication for his psychiatric condition). Although adjourning the sentencing until Donato was feeling better might have been advisable, we do not think that the district court abused its discretion by concluding that it had no "reasonable cause" to believe that a competency hearing was necessary.

The district court was able to observe Donato's demeanor and had the benefit of hearing directly his brief statement at sentencing. Additionally, Donato's attorney stated that she had spoken with him three times the previous day, after the mismedication, and that while he appeared to be suffering unfortunate effects from the medicine, he was lucid and able to understand the proceedings. These assurances, combined with the court's own observations, overcome any reasonable doubt as to the defendant's competence that may have

been raised by his statement that he felt dizzy.[10]

### III. Presentence Investigation Report

 Donato, through counsel, next argues that the district court violated Fed. R.Crim.P. 32(b) by resentencing him without an updated PSR. Because Donato did not object to the use of the original PSR at the time of resentencing, we review its use for plain error. *See United States v. Thomas,* 274 F.3d 655, 667 (2d Cir.2001) (in banc) (setting out the four-part test for plain error). We conclude that the district court did not commit error, much less plain error, by relying on the original PSR at resentencing.

Rule 32(b) provides:

**Presentence Investigation and Report (1) When Made.** The probation officer must make a presentence investigation and submit a report to the court before the sentence is imposed, unless:

(A) the court finds that the information in the record enables it to exercise its sentencing authority meaningfully under 18 U.S.C. § 3553; and

(B) the court explains this finding on the record.

We have held that Rule 32 does not require " 'an updated PSR in the event of *resentencing* ' " if, for example, "the parties are given a full opportunity to be heard and to supplement the PSR as needed .... " *United States v. Triestman,* 178 F.3d 624, 633 (2d Cir.1999) (emphasis in original; quoting *United States v. Conhaim,* 160 F.3d 893, 896 (2d Cir.1998)).

Donato was provided a full opportunity to supplement the original PSR, and the need for an updated PSR was not readily

---

**10.** In cases where appellate courts have reversed because of a trial court's failure to order a competency hearing, the evidence of incompetency was significantly stronger. *Compare Drope,* 420 U.S. at 164–67, 177–82, 95 S.Ct. 896 (further inquiry needed when the defendant tried to kill his wife on the eve of trial and attempted suicide during trial, his counsel said he was insane, a doctor's report questioned his sanity, and he had a history of irrational behavior); *Pate,* 383 U.S. at 385–86, 86 S.Ct. 836 (holding that despite the defendant's good behavior during trial, the court should have held a competency hearing when presented with "uncontradicted testimony of [the defendant's] history of pronounced irrational behavior"); *Auen,* 846 F.2d at 878 (holding that a hearing should have been held because the defendant "set forth his various irrational, paranoid beliefs," rambled in court, and exhibited bizarre behavior); *Johnson v. Norton,* 249 F.3d 20, 22–24, 27–28 (1st Cir.2001) (reversing for failure to hold a competency hearing when the defendant passed out three times on the day of trial after being hit on the head, the defendant complained that he did not know what was going on, and trial counsel indicated that he was unable to communicate with the defendant); *McGregor,* 248 F.3d at 955 (holding that a competency hearing was required "in light of the inconsistent evidence concerning whether [the defendant] was properly medicated throughout trial, counsel's repeated and vehement contentions that his client was unable to assist in his own defense, [the defendant's] odd behavior at trial and, of course, [the defendant's] substantial history of mental illness"), *with Kirsh,* 54 F.3d at 1070–71 (holding that no hearing was necessary even though the defendant's first counsel questioned the defendant's competence because the defendant and his second counsel claimed he was competent, psychiatric reports indicated that he was competent, and he behaved normally at trial); *Vamos,* 797 F.2d at 1149–51 (holding that a competency hearing was not required prior to trial because counsel did not request one and the defendant was active during the trial, even though the guilty plea was vacated several months previously after defense counsel and a doctor said the defendant was incompetent); *Chichakly v. United States,* 926 F.2d 624, 631–32 (7th Cir.1991) (holding that despite the defendant's allegations that he was incompetent due to psychiatric medications, "[t]here is certainly no need to conduct a competency hearing when there is no evidence before the Court of incompetency and when the defense attorney failed to request one and neither the prosecuting attorney nor the judge saw a need for one").

apparent. The government, the probation department, and Donato all agreed on the resolution of the "double counting" issue. The defendant submitted a detailed letter updating the court on his conduct while incarcerated. And the court provided the defendant, as well as his counsel, an opportunity to speak at the resentencing hearing. In retrospect, an updated PSR might have been useful because the probation department might have noticed, as we explain below, that the fine was miscalculated. But because the defendant did not object to the amount of the fine, we cannot fault the district court for failing to order a new PSR to address that issue.

IV. Downward Departure

Donato's *pro se* argument that the district court failed to consider his motion for a downward departure based on post-sentencing rehabilitation is without merit. The court considered and rejected this motion on its merits. Parenthetically, the court was plainly correct in denying it. Donato and the government agree that the Guidelines effective November 1, 2000 apply to the resentencing, and U.S.S.G. § 5K2.19 of the Guidelines as of that date prohibits a downward departure based on post-sentencing rehabilitative efforts.

V. The Amount of the Fine

 The government concedes that the amount of the fine is in error. On remand for resentencing, the parties agreed that Donato's previously determined offense level of thirty-two was improper due to "double counting" and that his total offense level is twenty-nine. Pursuant to U.S.S.G. § 5E1.2(c)(3), a defendant with a total offense level of twenty-nine is subject to a fine between $15,000 and $150,000. The court, however, reimposed the original fine of $175,000, which is an appropriate fine under the Guidelines only for offense levels of thirty-two or greater. *See* U.S.S.G. § 5E1.2(c)(3). Because the dis-

trict court imposed a fine above the Guideline range without explaining its reason for the departure, the $175,000 fine was clearly imposed in error. *See* 18 U.S.C. § 3353(c)(2) (stating that the court must, at time of sentencing, provide explanation for departure from guidelines range). Even though Donato did not object to the amount of the fine in the district court, a limited remand for the purpose of redetermining the amount of the fine is necessary because the error was plain, it affects Donato's substantial rights, and failing to correct the error would seriously affect the fairness of the judicial proceedings. *See Thomas,* 274 F.3d at 667.

## CONCLUSION

For the foregoing reasons, we affirm in part, but vacate the imposition of the fine and remand to the district court for the limited purpose of imposing a fine within the appropriate Guideline range, or imposing a fine above the Guideline range with appropriate explanation.