UNITED STATES of America.

v.

Chester MITCHELL, Defendant.

No. 08–CR–253 (ADS).

United States District Court,
E.D. New York.

Dec. 13, 2011.

Loretta A. Lynch, United States Attorney for the Eastern District of New York, by: Carrie N. Capwell, Assistant United States Attorneys, Central Islip, NY, Attorney, for the United States.

LaRusso & Conway, by: Robert P. LaRusso, Esq., Of Counsel, Mineola, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

ARTHUR D. SPATT, District Judge.

Presently before the Court is a motion by defendant Chester Mitchell ("Mitchell") for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). For the reasons that follow, the Court finds that an evidentiary hearing is required to determine Mitchell's eligibility for a sentence reduction.

### I. BACKGROUND

On May 22, 2009, pursuant to a plea agreement with the Government, Defendant Chester Mitchell pled guilty to a lesser-included offense of Count One of the indictment, which charged him with distributing five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) (the "Plea Agree-

ment"). In the Plea Agreement, Mitchell stipulated that his sentence "should be calculated based on a drug type and quantity of at least 150 grams of cocaine base. . . ." (*Id.* at 3.) The Plea Agreement also stated that Mitchell was entitled to a three-level reduction for acceptance of responsibility, and, assuming all of the defendants in the case pled guilty by May 22, 2009, Mitchell was eligible for an additional one-level reduction for global disposition. (Plea Agreement at 2–3.)

On August 3, 2009, the probation department filed a presentence investigation report ("PSR"), which stated that Mitchell was accountable for 436.6 grams of crack cocaine. (PSR ¶ 17.) In a November 13, 2009 Sentencing Memorandum, counsel for Mitchell accepted "for discussion purposes, the PSR drug quantity of 436 grams of crack cocaine attributable to Mitchell", but disputed in a footnote the amount of crack cocaine attributable to Mitchell in the PSR. In particular, the Sentencing Memorandum stated:

> Though Mitchell has agreed and "stipulate[d] that his sentence should be calculated based on a drug type and quantity of at least 150 grams of cocaine base" (see, plea agreement, page 2 paragraph 2), we submit that there is insufficient evidence to hold Mitchell accountable for 436.6 grams of crack cocaine as noted in the PSR. (PSR ¶ 17) In regard to the January 2008 cocaine purchases, other than co-defendant Perfecto Reyes' ("Reyes") alleged remark to the cooperating witness that "deliveries of 100 grams of cocaine were usually made to Mitchell, who cooked the cocaine into crack cocaine" (PSR ¶ 6), there is insufficient evidence to believe that Mitchell converted or even attempted to convert the January 2008 purchases of cocaine into crack cocaine. The PSR incorrectly reported that the January purchases of 100 and 110 grams of cocaine were "sub-

sequently cooked into crack." (PSR ¶ 17) There simply was "no" evidence that Mitchell actually converted the January cocaine purchases into crack cocaine or even admitted to doing so. Moreover, the PSR made the same error in regard to the March 2008 transaction by reporting that Mitchell "cooked 200 grams of cocaine that he purchased from Baez on March 17, 2008 into crack cocaine." (PSR ¶ 17) The government's evidence actually showed that Mitchell cooked only "two(2) 50–gram batches of crack cocaine," and not 200 as mentioned in the PSR. Lastly, the PSR noted that "[a]ccording to Assistant District Attorney Jeannine Mazzola, a laboratory report from [the state] case revealed that a total of .093 ounces (or 26.3 grams) of crack cocaine was obtained from Mitchell" which formed the basis of state charges in Nassau County. (PSR ¶¶ 17 and 54) Our review of the laboratory reports provided by the government showed cocaine. Moreover, Mitchell pled guilty to cocaine offenses which were the subject of the state indictment. We never received an arrest report indicating crack cocaine sales by Mitchell.

(Def.'s Sentencing Mem. at 5 n. 1.)

At the sentencing hearing on February 12, 2010, Mitchell withdrew his objection to the 436.6 grams attributed to him in the PSR based on his acknowledgment that his base offense level would not change regardless of whether he was held accountable for 150 grams or 436 grams of crack cocaine. Specifically, Mitchell's counsel stated:

> "Though we have taken some exception to the total quantity involved, the total quantity that the probation department claims is applicable, I've spoken with Mr. Mitchell, he understands that the total quantity is not going to affect level

in the guideline. So we're going to withdraw our objection to the total quantity and not oppose the probation department's finding of 435 or 436 grams of crack cocaine. *Because it doesn't change the offense level.*"

(Sentencing Transcript, 9:15–23 (emphasis added).)

Thus, accepting the facts in the PSR, the Court determined, based upon the quantity of drugs involved in his offense, that Mitchell had a base offense level of 32. After applying a three-level reduction for acceptance of responsibility and a one-level reduction for the global disposition of the case, the total offense level was 28. Given Mitchell's Criminal History Category of III, the Court found that the applicable Guidelines sentencing range was 97–121 months, with a mandatory minimum of 60 months. After consideration of a number of factors, including the 18 U.S.C. § 3553(a) factors and the disparity between the Guidelines' treatment of crack and powder cocaine offenses, the Court sentenced Mitchell to a non-Guidelines sentence of 72 months.

Effective November 1, 2011, the United States Sentencing Commission ("Sentencing Commission") approved part A of Amendment 750, which altered the offense levels in § 2D1.1 of the U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines Manual") applicable to crack cocaine offenses (the "Guidelines Amendment"). *See* U.S.S.G. § 2D1.1 (2011). In addition, the Sentencing Commission gave this amendment retroactive application. *See* U.S.S.G. § 1B1.10(c) (2011). Relying on the Guidelines Amendment, Mitchell now seeks a reduction in his sentence.

The parties disagree as to whether Mitchell is eligible for a sentence reduction. The Government contends that, because Mitchell was sentenced based on the 436.6 grams attributed to him in the PSR, Mitchell's base offense level, and therefore his applicable guidelines range, is unaffected by the Guidelines Amendment. As a result, the Government argues that Mitchell is ineligible for a sentence reduction. For his part, Mitchell argues that it is improper to assess his eligibility based on the 436.6 grams attributed to him in the PSR and accepted at his sentencing. According to Mitchell, because he objected to the 436.6 grams both in his sentencing memorandum and at his sentencing, his amended guideline range should be calculated using the 150 grams stipulated to in the Plea Agreement. As set forth below, the Court finds that the Court is neither bound by the 436.6 grams in the PSR, nor is Mitchell automatically entitled to a sentence based on 150 grams. Rather, an evidentiary hearing is necessary to determine the quantity of drugs attributable to Mitchell, and therefore whether he is eligible for a sentence reduction.

## II. DISCUSSION

As a general rule, a federal court "may not modify a term of imprisonment once it has been imposed". 18 U.S.C. § 3582(c); *Cortorreal v. United States,* 486 F.3d 742, 744 (2d Cir.2007). However, Congress has allowed an exception to that rule, providing in 18 U.S.C. § 3582(c)(2) that:

> in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(*o*), . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2). The policy statement governing § 3582(c) proceedings is

located in § 1B1.10 of the Guidelines Manual, and, effective November 1, 2011, gives retroactive effect to the Guidelines Amendment. *See* § 1B1.10(c).

In *Dillon v. United States*, —— U.S. ——, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010), the U.S. Supreme Court identified a two step-inquiry for courts to follow in adjudicating a motion for a sentence reduction under 18 U.S.C. § 3582(c). At the first step, a court must determine whether the defendant is eligible for a sentence reduction. *Dillon,* 130 S.Ct. at 2691. If, and only if, the court finds that the defendant is eligible for a sentence reduction under § 3582(c) and § 1B1.10, "then the second step of the analytical framework set forth in *Dillon* requires the district court 'to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case' ". *United States v. Mock,* 612 F.3d 133, 137 (2d Cir.2010) (quoting *Dillon,* 130 S.Ct. at 2692).

However, the court cannot reduce the defendant's sentence "to a term that is less than the minimum of the amended guideline range", unless the defendant initially received a below guidelines sentence that was imposed "pursuant to a government motion to reflect the defendant's substantial assistance to authorities". § 1B1.10(b)(2)(B). Unlike in typical sentencing proceedings where the guidelines are "merely advisory, the limitations on the degree of a sentence reduction under § 3582(c) are mandatory". *United States v. Rivera,* 662 F.3d 166, 171 (2d Cir.2011) (citing *Dillon,* 130 S.Ct. at 2691). This is because "no Sixth Amendment problem of the sort identified in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) results from the restrictions on a district court's sentencing discretion on a motion for a reduced sentence under 18 U.S.C. § 3582(c)(2)." *Mock,* 612 F.3d at 137 (citing *Dillon,* 130 S.Ct. at 2692–93.) Here, the parties dispute focuses on Mitchell's eligibility for a sentence reduction.

In order for a defendant to be eligible for a sentence reduction, the defendant's applicable guideline range must have been lowered by the Guidelines Amendment. *See* § 1B1.10(a)(1); *see also United States v. Johnson,* 633 F.3d 116, 117 (2d Cir. 2011). Whether a defendant's guideline range would be lowered under the Guidelines Amendment requires a court to "determine the amended guideline range that would have been applicable to the defendant if the [Guideline Amendment] had been in effect at the time the defendant was sentenced". § 1B1.10(b)(1). "In making such determination, the court shall substitute only the [Guideline Amendment] for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Id.* Application Note 1 to § 1B1.10 further clarifies that the applicable guideline range referenced in § 1B1.10 is "the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before any departure provision in the Guidelines Manual or any variance". § 1B1.10 Application Note 1(A).

■ The potential impact of the Guidelines Amendment on Mitchell's amended guidelines range is as follows. At the time Mitchell was sentenced in May of 2009, his applicable guidelines range was calculated based on the 2008 Federal Sentencing Guidelines (the "2008 Guidelines"). Under the 2008 Guidelines, the Base Offense Level of 32 applied to quantities of crack cocaine between 150 grams and 500 grams.

Under the 2011 Guidelines, this range straddles three offense level sections.

First, under § 2D1.1(c)(4), the base offense level for quantities of crack cocaine between 280 grams and 840 grams is 32. After reductions for acceptance of responsibility and global disposition, the amended guidelines range for an offender in Criminal History Category III is 97 to 121 months. Thus, if Mitchell were responsible for the 436.6 grams attributed to him in the PSR, he would not be eligible for a sentence reduction because the Guidelines Amendment would not result in a change to his applicable guidelines range.

Second, under § 2D1.1(c)(5), the base offense level for quantities of crack cocaine between 196 grams and 280 grams is 30. After reductions for acceptance of responsibility and global disposition, the amended guidelines range for an offender in Criminal History Category III is 78 to 97 months. Although Mitchell would be eligible for a sentence reduction at this quantity, because he received a non-guidelines sentence of 72 months, and § 1B1.10(b)(2)(A) does not permit the imposition of sentences below the minimum amended guidelines range, Mitchell's sentence would be unaffected.

Finally, under § 2D1.1(c)(6), the base offense level for quantities of crack cocaine between 112 grams and 196 grams is 28. After reductions for acceptance of responsibility and global disposition, the amended guidelines range for an offender in Criminal History Category III is 63 to 78 months. At this quantity, Mitchell would be eligible for and could receive a sentence reduction to 63 months.

As an initial matter, Mitchell's contention that, because he stipulated to 150 grams of crack cocaine in his Plea Agreement, that 150 grams is the applicable drug quantity for the purpose of determining his eligibility for a sentence reduction

is without merit. Mitchell clearly pled guilty to conspiring to possess with the intent to distribute "at least 150 grams of cocaine base"—*i.e.,* 150 grams or more. (Plea Agreement at 3.) Thus, the issue before this Court is whether the 436.6 grams attributed to Mitchell in the PSR and accepted by this Court at the sentencing is binding, or whether the Court may hold an evidentiary hearing to determine whether his amended guidelines range should be based on a lesser quantity of crack cocaine.

■ In *Dillon,* the Supreme Court held that: "Section 3582(c)(2)'s text, together with its narrow scope, shows that Congress intended to authorize only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon,* 130 S.Ct. at 2691; *see also* § 1B1.10(a)(3) ("[T]his policy statement do not constitute a full resentencing of the defendant."). Consequently, it is well-settled that in assessing the defendant's eligibility for a reduction under § 3582(c), the court is not authorized to address any arguments as to procedural errors that may have occurred at the defendant's original sentencing, regardless of their merit. *See United States v. Mock,* 612 F.3d 133, 138 (2d Cir.2010).

With respect to factual determinations, the prevailing position appears to be that these too are outside the scope of a court's authority in a modification proceeding. *See United States v. Woods,* 581 F.3d 531, 538 (7th Cir.2009) (holding that "district courts in § 3582(c)(2) proceedings cannot make findings inconsistent with the original sentencing court"); *United States v. Adams,* 104 F.3d 1028, 1030–31 (8th Cir. 1997) ("[T]he sentencing guidelines direct a district court ... to consider the sentence that it would have imposed had the amendment ... been in effect at the time

of the original sentencing. We think it implicit in this directive that the district court is to leave all of its previous factual decisions intact when deciding whether to apply a guideline retroactively.") (internal citations and quotation marks omitted). However, recent caselaw suggests the possibility that further inquiry is permitted where a factual determination is necessary to resolve the question of a defendant's eligibility for a sentence reduction.

For example, in *United States v. Johnson*, 633 F.3d 116 (2d Cir.2011), the Second Circuit affirmed the district court's holding that the defendants were ineligible for a sentence reduction under 18 U.S.C. § 3582(c) because the relevant guidelines amendment did not alter the guidelines range for crimes involving 4.5 kilograms or more of crack cocaine. The defendants argued on appeal that the district court erred in denying their motions because, although they were originally sentenced for crimes involving 4.5 kilograms or more of crack cocaine, "they either were not or should not have been found responsible for that quantity of drugs". 633 F.3d at 118. The Second Circuit affirmed the district court's holding, not on the basis that the district court was prohibited from making the evidentiary determination, but rather because "[t]here [was] no basis in the record to challenge successfully the district court's determination of the quantities of crack cocaine attributable to the defendants for the purposes of calculating their sentencing guideline ranges." *Id.*; *see also United States v. Wingo*, 429 Fed. Appx. 549, 551 (6th Cir.2011) (affirming denial of a defendant's motion for sentence reduction pursuant to § 3582(c) because the attributable drug quantity was unknown, and, rejecting the defendant's request "to remand his case to the district court to settle on the quantities" not only because the defendant did not cite any authority indicating that new sentencing hearings were permitted "to discover whether a defendant may be eligible for discretionary relief", but also because: (1) the defendant was not challenging "the voluntariness of his waiver of drug quantity determinations or the procedural reasonableness of the district court's acceptance of that waiver in lieu of making its own quantity findings"; and (2) the defendant did not argue "that the denial of a reduction would work some serious injustice that [the court is] obliged to correct in the name of fundamental fairness"); *but see United States v. Hernandez*, 645 F.3d 709, 712 (5th Cir.2011) (affirming the district court's denial of a motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c) and refusal "to grant an evidentiary hearing to decide the amount of crack for which [the defendant] was responsible" because the defendant, unlike his co-conspirator, did not challenge the quantity of drugs attributed to him in the PSR on appeal and "[a] modification proceeding is not the forum for a collateral attack on a sentence long since imposed and affirmed on direct appeal") (citing *Dillon*, 130 S.Ct. at 2692).

Furthermore, as the Second Circuit held in *United States v. Rivera*, 662 F.3d 166 (2d Cir.2011), although a court's "task is limited to construing the relevant statutory and Guidelines provisions", because "[r]etroactive amendments exist to allow inequalities to be fixed", a court "is not required to perform [this task] wearing blinders". *Id.*, at 176. Thus, even though the original sentence is the law of the case, *United States v. Givens*, 350 Fed.Appx. 581, 583 (2d Cir.2009), (stating that an appellants objections on a 18 U.S.C. § 3582(c) motion "with respect to his original plea and sentencing [were] foreclosed by the law of the case doctrine"), a court "may depart from the law of the case and reconsider the issue for 'cogent' and 'com-

pelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice' ", *United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir.2002) (quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir.2000)).

Under the unique circumstances of this case, the Court finds that an evidentiary hearing is warranted to determine the quantity of crack cocaine attributable to Mitchell, and therefore his eligibility for a sentence reduction. In his sentencing memorandum, Mitchell explicitly objected to the 436.6 grams, setting forth specific arguments for why there was insufficient evidence to support that quantity. More importantly, in withdrawing his objection to the 436.6 grams at the sentencing hearing, Mitchell stated that the basis for this withdrawal was not an admission of the amount or a concession that the amount was supported by sufficient evidence. Rather, Mitchell acknowledged that because he pled guilty to conspiring to possess with the intent to distribute 150 grams or more of crack cocaine, it was unnecessary to challenge the PSR's finding because it would not ultimately impact his base offense level. Thus, Mitchell preserved his objection to challenge the drug quantity attributable to him in the event it would affect his base offense level.

Although the Court is aware of its limited authority under § 3582(c) to revisit factual determinations made at the original sentencing, on these facts, the Court finds that the interest of justice weighs heavily in favor of permitting Mitchell to challenge the drug quantity in the PSR. As stated above, if Mitchell can show there is insufficient evidence to hold him responsible for more than 196 grams of crack cocaine, he may be eligible for a sentence reduction of up to nine months. Furthermore, a failure to respect Mitchell's objection would result in an increased burden on district courts because "defendants would be forced to litigate every aspect of the sentencing report in the original hearing, even though irrelevant to the immediate sentencing determination" in anticipation of the very real possibility that Congress will approve further sentence reductions for crack cocaine offenses. *Quintieri*, 306 F.3d at 1230 (discussing the propriety of district courts addressing issues on remand that were not raised at the original sentencing) (internal quotation marks and citations omitted).

Thus, the Court finds that Mitchell is entitled to an evidentiary hearing for the purposes of determining his eligibility for a sentence reduction pursuant to § 3582(c).

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the parties are directed to appear for an evidentiary hearing on Friday, January 6, 2012 at 11:30am.

**SO ORDERED.**