**Victor J. ORENA and Pasquale Amato, Movants,**

v.

**UNITED STATES of America, Respondent.**

**Nos. 96 CV 1461, 96 CV 1474, 92 CR 351.**

United States District Court, E.D. New York.

Jan. 15, 2004.

Flora Edwards, Benjamin Brafman, Brafman & Ross, P.C., Alan S. Futerfas, Gerald L. Shargel, Law Offices of Jeffrey H. Lichtman, Esq., New York City, for Petitioners.

George Stamboulidis, Andrew Weissman, United States Attorney's Office, Brooklyn, NY, for Respondent.

### MEMORANDUM and ORDER

WEINSTEIN, Senior District Judge.

In the closing decades of the last century heavily armed mobs of Mafiosi, protected by bullet proof vests and scanners monitoring police radio channels, roamed the

streets of New York in their automobiles (bugged by the Federal Bureau of Investigations) shooting down their rivals in crime. One of the more fascinating episodes was the civil war in the Columbo organized crime family.

In the sequelae of that struggle, the two movants, Victor J. Orena and Pasquale Amato, were convicted in the early 1990's of various crimes, including murder. They were sentenced to life imprisonment and loss of all their assets. Their convictions were affirmed. Collateral attacks on the judgments of conviction were rejected by the trial court after an extensive evidentiary hearing. The by now archaic history is fully described in *United States v. Sessa,* 821 F.Supp. 870 (E.D.N.Y.1993), *aff'd sub nom, United States v. Amato,* 15 F.3d 230 (2d Cir.1994) and *United States v. Orena,* 32 F.3d 704 (2d Cir.1994); *Orena v. United States,* 956 F.Supp. 1071 (E.D.N.Y.1997), *aff'd by summary orders, Orena v. United State* (2d Cir. April 28, 1998) and *Amato v. United States,* (2d Cir. April 20, 1998).

As of 1997 the matter was accurately summed up as follows:

Attempting to transform a troubling cloud of questionable ethics and judgment enveloping an F.B.I. Special Agent into a raging storm of reasonable doubt, petitioner-defendants move for dismissal of their indictments or for new trials.... The claim is that the government violated its disclosure obligations under *Brady v. Maryland,* after engaging in and covering up outrageous government misconduct.

Orena and Amato contend that it was not they—the convicted criminals—but ex-F.B.I. Special Agent, R. Lindley De-Vecchio, who conspired with one of the defendants' associates—the murderer Gregory Scarpa—to cause the killing of their partner, the loanshark, Thomas Ocera, and to instigate an internecine mafia war. The evidence to prove this bizarre, but not entirely implausible, contention, defendants argue, should have been supplied to defense counsel so that they could rely on the jurors' rationality or befuddlement (they claim either provides a justifiable basis for reasonable doubt) to achieve a verdict of not guilty, or at least disagreement sufficient for a mistrial.

Scarpa has died in prison and can provide no help on the facts. DeVecchio, having been allowed to resign from the F.B.I. ....[,] was granted immunity, all documents relevant to his background were revealed, and he was subjected to fierce examination by defense counsel.

Despite the seamy aspects of law enforcement revealed by the record, ... defendants' factual assumptions and legal theories are unpersuasive.

956 F.Supp. at 1076–77 (citations omitted).

As an epilogue, Orena and Amato now present further "evidence" in a renewal of their attack on their convictions. An additional full evidentiary hearing was held on their new motions. The only relevant support for their contentions of any significance are the alleged confessions of Scarpa to his son, Gregory Scarpa, Jr., a convicted murderer and a made member of a mafia family, that it was the father and Del Vecchio, not defendants, who killed a fellow gang member and organized the mob war. Gregory Scarpa, Jr. testified by video from prison where he is serving what amounts to more than a life sentence.

Other witnesses called by petitioners at the hearing presented no testimony of any significance. None revealed any direct knowledge of Del Vecchio's alleged demonic connection to the senior Scarpa that can be credited.

Gregory Scarpa, Jr. testified that Del Vecchio was paid some $100,000, furnished with such "entertainment" as call girls, champagne, and a hotel suite at the Holiday Inn in Staten Island, and provided an all-expense paid trip to Aspen, Colorado for services he rendered to the senior Scarpa and the mob, and that for these and other benefits Del Vecchio started the Columba war, helped Gregory Scarpa and his associates hunt down and kill members of a competing faction of the mob, and protected the Scarpas, father and son, from the police. The court finds this witness to be not credible. His source is also not credible on these matters.

The only substantial information Scarpa, Jr. had was furnished to him orally by his parent. The son, if he is credited at all, was told by his sire what Del Vecchio was doing for the mob and what the elder Scarpa was doing for Del Vecchio. The son observed nothing that took on significance without the father's extra-judicial statements. Since both Scarpas were sentenced to federal prison, where the father died, and the son is serving an almost endless sentence, they had good reason to want to further damage the reputation of the F.B.I. and to help their erstwhile friends, and sometimes adversaries, Amato and Orena.

None of the newly presented evidence is persuasive. The court's decision of March 10, 1997 denying a similar collateral attack remains unshaken in its premises and findings. The motions are denied.

So Ordered.