24-835 (Con)
*U.S. v. Orena*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2024

(Argued:  December 12, 2024    Decided: July 31, 2025)

Docket Nos. 23-7133(L), 24-835(Con)[*]

UNITED STATES OF AMERICA,

*Appellee,*

–v.–

VICTOR J. ORENA, AKA VICTOR J. ORENA, AKA LITTLE VIC, MICHAEL SESSA,

*Defendants-Appellants,*

PASQUALE AMATO, CARMINE SESSA, LAWRENCE A. FIORENZA, LAWRENCE MAZZA, JOSEPH RUSSO, AKA JO JO, ANTHONY RUSSO, AKA CHUCKIE, ROBERT ZAMBARDI, AKA BOBBY ZAM, JOSEPH MONTELEONE, SR., AKA JOE MONTE, SR., ALPHONSE PERSICO, AKA ALLIE BOY, JOSEPH TOMASELLO, AKA JOE T, THEODORE PERSICO, AKA TEDDY, RICHARD FUSCO, AKA RICHIE, JAMES DELMASTRO, AKA JAMES DELMASTRO,

*Defendants.*[†]

---

[*]  The lead appeal, 23-7133, was previously determined by order filed on May 10, 2024.

[†]  The Clerk of Court is respectfully instructed to amend the caption as set forth above.

Before:    ROBINSON, PÉREZ, and NATHAN, *Circuit Judges*.

This case arises from Defendant-Appellant Victor J. Orena's convictions for his role in the "Colombo Family War"—a power struggle between two factions of an organized crime family that led to a spate of assassinations and other violent crimes. In 1992 after a trial, the jury found Orena guilty of nine charges, including use and carrying of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). In 2021, Orena successfully brought a § 2255 petition to vacate the § 924(c)(1) conviction in light of *United States v. Davis*, 588 U.S. 445 (2019). He sought *de novo* resentencing on the remaining counts. The district court denied his request and, instead, corrected the judgment to excise Orena's conviction and consecutive sentence on the § 924(c) charge, but leaving the balance of his sentence on the remaining eight counts of conviction the same.

Orena appeals from this judgment of the United States District Court for the Eastern District of New York (Komitee, *J.*). He argues that the district court was required to conduct *de novo* resentencing on all of the remaining counts. Specifically, Orena contends that our recent decision in *Kaziu v. United States*, 108 F.4th 86 (2d Cir. 2024) requires *de novo* resentencing whenever a judge of the *habeas* court is not the original sentencing judge and there are changed circumstances.

We conclude that *Kaziu* is meaningfully distinguishable from this case, and that the district court acted within its discretion in declining to conduct a full resentencing where the *habeas* judge had just decided a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), in which he had thoroughly assessed and ruled on the 18 U.S.C. § 3553(a) factors. In that context, the court considered and ruled on the effect of most of the changed circumstances on which Orena relies in requesting a full resentencing. Insofar as Orena argues that he should be resentenced because his original sentence predated the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 245 (2005), which established that the United States Sentencing Guidelines are advisory, not mandatory, we conclude that, on the record here, resentencing is not compelled on this basis. Finally, the remaining

2

"sentencing" arguments Orena made to the district court sought only to undermine the *validity* of his remaining counts of conviction and would not be proper considerations as to his *sentence* for those charges. Therefore, the district court did not exceed its discretion when it declined to conduct *de novo* resentencing.

For the reasons set forth below, we **AFFIRM** the district court's judgment.

———————

DAVID I. SCHOEN, Montgomery, AL, *for Defendant-Appellant*.

DEVON LASH (Nicholas J. Moscow, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee*.

———————

ROBINSON, *Circuit Judge*:

This case arises from Defendant-Appellant Victor J. Orena's convictions for his role in the "Colombo Family War"—a power struggle between two factions of an organized crime family that led to a spate of assassinations and other violent crimes. In 1992 after a trial, the jury found Orena guilty of nine charges, including use and carrying of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). In 2021, Orena successfully brought a petition under 28 U.S.C. § 2255 to vacate the § 924(c)(1) conviction in light of *United States v. Davis*, 588 U.S. 445 (2019). He sought full resentencing "*de novo*," or anew, on the remaining

counts.[1]   The district court denied Orena's request and, instead, entered an amended judgment that corrected Orena's sentence to excise his conviction and consecutive sentence on the § 924(c) charge, but left the balance of his sentence on the remaining eight counts of conviction the same.

Orena appeals from this judgment of the United States District Court for the Eastern District of New York (Komitee, *J.*).  He argues that the district court was required to conduct *de novo* resentencing.  Specifically, Orena contends that our recent decision in *Kaziu v. United States*, 108 F.4th 86 (2d Cir. 2024), requires *de novo* resentencing upon vacatur of a count of conviction whenever a *habeas* judge is not the original sentencing judge and there are changed circumstances.

But this case presents meaningfully different circumstances from *Kaziu*. Though the *habeas* judge was not the original sentencing judge and there are changed circumstances, here, the *habeas* judge had just decided a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).  In that context, he had thoroughly evaluated the factors under 18 U.S.C. § 3553(a) that drove the original sentence and would drive any resentencing, and he had considered the effect of

---

[1]  Significantly, vacatur of the § 924(c) conviction did not affect the Sentencing Guidelines calculation for the sentence on the remaining counts, to which Orena's § 924(c) sentence was consecutive.  If Orena's § 924(c) conviction had impacted the Guidelines calculation on the remaining counts, that would be a different case.  We do not consider whether resentencing would be required in that circumstance.

most of the changed circumstances on which Orena relies in requesting a full resentencing.

Insofar as Orena argues that he should be resentenced because his original sentence predated the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 245 (2005), which established that the United States Sentencing Guidelines are advisory, not mandatory, we conclude that, on this record, resentencing is not compelled on this basis.

Finally, the remaining "sentencing" arguments that Orena made to the district court sought to undermine the *validity* of his remaining counts of conviction and would not be proper considerations as to his *sentence* for those charges. Therefore, the district court did not abuse its discretion when it declined to conduct *de novo* resentencing.

In reaching this conclusion, we eschew a bright line rule that *always* requires resentencing after vacatur of a conviction whenever the resentencing would not be strictly ministerial. But we do not take issue with our observation in *United States v. Peña* that "[i]t may be that in most cases in which resentencing would not be strictly ministerial, a district court abuses its discretion when it denies *de novo*

resentencing."  58 F.4th 613, 623 (2d Cir. 2023).[2]  We simply conclude that under the unique circumstances here, the district court did not exceed its discretion.

For the reasons set forth more fully below, we **AFFIRM** the district court's judgment.

## BACKGROUND

This case arises from Orena's convictions for his role in the "Colombo Family War" that led to the attempted assassinations, woundings, or successful assassinations of at least twenty-eight individuals, three of whom were innocent bystanders.

In 1992, Orena was convicted of nine counts, including conspiracy to murder Thomas Ocera, the murder of Thomas Ocera in aid of racketeering, conspiracy to murder members of the Persico faction of the Colombo Family in aid of racketeering, and using and carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c).[3]

---

[2]  When quoting the appendix, the parties' briefs, and caselaw, we omit all internal quotation marks, footnotes, ellipses, and citations, and accept all alterations, unless otherwise noted.

[3]  Specifically, Orena was convicted of racketeering, in violation of 18 U.S.C. § 1962(c); racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); conspiracy to murder Thomas Ocera,

6

These convictions followed a month-long jury trial at which the Government introduced evidence that Orena was appointed as the Acting Boss of the Colombo Family during the incarceration of Carmine Persico, the Official Boss of the Colombo Family. Though Orena's appointment to Acting Boss was contingent on his promise to relinquish control to Carmine Persico's son, Alphonse Persico, upon the son's release from prison, Orena began an internal campaign to permanently retain control over the Colombo Family. The Family was divided between those who supported Orena and those who supported Alphonse Persico. In late 1991, the Colombo Family War erupted in earnest, with members from each faction attempting to assassinate members of the other. Orena and others in his faction conspired to murder at least eleven individuals, actually murdered two, and killed an innocent bystander.

---

in violation of 18 U.S.C. § 1959(a)(5) and New York Penal Law §§ 125.25 and 105.15; the murder of Thomas Ocera in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1) and New York Penal Law §§ 125.25 and 20.00; conspiracy to murder members of the Persico faction of the Colombo Family in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) and New York Penal Law §§ 125.25 and 105.15; conspiracy to make extortionate extensions of credit, in violation of 18 U.S.C. § 892; conspiracy to make extortionate collections of credit, in violation of 18 U.S.C. § 894; use and carrying of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1); and unlawful possession of firearms by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The sentencing court[4] (Weinstein, *J.*) imposed three concurrent life sentences for racketeering, racketeering conspiracy, and murder; three ten-year concurrent sentences for the two murder-conspiracy counts and for illegal possession of firearms; and two twenty-year concurrent sentences for the two loansharking counts. For the use and carrying of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1), the sentencing court sentenced Orena to five years to run consecutively. In its sentencing memorandum and order, the sentencing court emphasized "[t]he drain on the city's human and economic resources," costs of which were "measured in the billions of dollars" as well as the death and injury of many individuals. *United States v. Sessa*, 821 F. Supp. 870, 874 (E.D.N.Y. 1993). As a result, "[c]onsiderations of incapacitation and general deterrence overwhelm[ed] all other factors in the sentencing," and imprisonment for life was required. *Id.* at 874–75. This court affirmed Orena's conviction and sentence on direct appeal. *United States v. Orena*, 32 F.3d 704, 707–08 (2d Cir. 1994).

Orena subsequently sought post-conviction relief more than once, including through a 28 U.S.C. § 2255 petition. He argued that an FBI agent secretly conspired

---

[4] Because different judges presided over the sentencing court on the one hand and this *habeas* proceeding on the other hand, we distinguish between the two. Judge Weinstein was the "sentencing judge" or the "sentencing court." Judge Komitee was the "*habeas* judge" or the "*habeas* court."

with a Colombo Family member, who also served as a confidential FBI informant, to instigate the intra-Family conflict and to commit the murders for which Orena was convicted. The sentencing court[5] denied the motions following several evidentiary hearings. *Orena v. United States*, 956 F. Supp. 1071, 1076–77 (E.D.N.Y. 1997) (denying Rule 33 motion and dismissing § 2255 petition); *Orena v. United States*, 299 F. Supp. 2d 82, 83-84 (E.D.N.Y. 2004) (denying Rule 60(b) motion).

In 2020, Orena sought leave to file a successive § 2255 petition on two grounds: (1) his § 924(c) conviction was invalid in light of *Davis*, and (2) wrongfully withheld and newly available evidence demonstrated his actual innocence. The Second Circuit granted leave to file a successive § 2255 petition based on the challenge to his § 924(c) conviction in light of *Davis*, and it did not consider Orena's other contention.

On remand, the government conceded that the § 924(c) conviction must be vacated and originally took the position that full resentencing on the remaining counts was required. Orena initially argued that full litigation of the § 2255 petition was required to address his argument that wrongfully withheld and newly available evidence demonstrated his actual innocence; and he agreed that

---

[5] Judge Weinstein presided over Orena's earlier *habeas* petitions.

full *de novo* resentencing would be required. Before resolving Orena's actual innocence claims, and on Orena's request because of his declining health, the district court held the § 2255 action in abeyance pending resolution of Orena's parallel motion for sentence reduction under 18 U.S.C. § 3582.

To support his motion for sentence reduction, Orena presented evidence that he suffers from many serious medical conditions and requires assistance with routine tasks. The government opposed sentence reduction, focusing its opposition on the sentencing factors under 18 U.S.C. § 3553(a).

In October 2021, the *habeas* court (Komitee, *J.*) denied the motion for sentence reduction. Because the government did not dispute that Orena presented extraordinary and compelling reasons for a sentence reduction, the *habeas* court focused its analysis on the 18 U.S.C. § 3553(a) factors. It detailed Orena's singular role in the Colombo Family and the number of deaths that resulted from his crimes, as well as the "crippling effects" on New York City's economy. Gov't App'x 7. The *habeas* court declined to consider Orena's new evidence attacking the integrity of his convictions because such "arguments are properly made in a petition for habeas relief." *Id.* at 6 n.4. The *habeas* court concluded that it was "left with the inescapable conclusion that any sentence short of the life term imposed by Judge Weinstein would insufficiently reflect the seriousness of the offense

10

conduct here and fail to provide just punishment," and denied Orena's sentence reduction motion. *Id.* at 8. The Second Circuit affirmed, concluding the *habeas* court rightly refused to weigh Orena's new evidence because the proper avenue for challenging the underlying convictions was a § 2255 petition, not a sentence reduction motion. *United States v. Amato*, 48 F.4th 61, 65–66 (2d Cir. 2022).

At that point, because of his deteriorating health, Orena no longer sought a hearing on the actual innocence branch of his § 2255 petition. Instead, he requested that the court conduct a full *de novo* resentencing on the counts of conviction that remained after vacatur of the § 924(c) conviction. Orena subsequently objected to the revised Pre-Sentence Report primarily on the basis that it did not incorporate the new evidence regarding alleged government misconduct that formed the basis for Orena's first and second § 2255 petitions. At that point, the government took the position that *de novo* resentencing was no longer required in light of our intervening decision in *Peña*.

The *habeas* court then denied Orena's motion for *de novo* resentencing. *United States v. Orena*, No. 92-cr-00351, 2024 WL 1199901, at *3 (E.D.N.Y. Mar. 20, 2024). The *habeas* court explained its decision to exercise its discretion to decline to conduct a full resentencing as follows. First, the *habeas* court noted that Orena relied primarily on his age and health challenges, and the associated unlikelihood

11

that he would reoffend, in arguing for a lower sentence. *Id.* at *2. The *habeas* court emphasized that it had already considered these factors in denying Orena's motion for compassionate release. *Id.*

Second, the *habeas* court observed that, while the United States Sentencing Guidelines were mandatory at the time of Orena's original sentencing—a potential reason to resentence here—the sentencing judge expressly disavowed reliance on the Guidelines and instead imposed life sentences based on a § 3553(a) analysis. *Id.*

Finally, the *habeas* court rejected Orena's argument that new evidence required *de novo* resentencing because: (1) the evidence was not actually new, but relied on the same conspiracy between the FBI and the Colombo Family member that Judge Weinstein previously rejected; and (2) any challenges to the validity of Orena's conviction must be brought via a § 2255 petition rather than as a basis for resentencing on unchallenged convictions. *Id.* at *2–3. The *habeas* court entered an amended judgment that excised Orena's conviction and consecutive sentence on the § 924(c) charge, but it left the balance of his sentence the same. *Id.* at *3.

Orena timely appealed and challenges the *habeas* court's refusal to conduct a *de novo* resentencing.

## DISCUSSION

Section 2255 vests district courts with discretion to choose between four statutorily prescribed remedies upon granting a § 2255 petition: (1) vacate and set aside the judgment; (2) resentence; (3) grant a new trial; or (4) correct the sentence. 28 U.S.C. § 2255(b). "*De novo* resentencing requires the district court to 'reconsider the sentences imposed on each count, as well as the aggregate sentence,' formulating anew the appropriate sentence for each unreversed conviction under the individualized assessment required by § 3553(a)." *Kaziu*, 108 F.4th at 88 (quoting *United States v. Rigas*, 583 F.3d 108, 118 (2d Cir. 2009)). We review a district court's decision to not conduct *de novo* resentencing for abuse of discretion. *See id.* at 92.

Orena argues that our evolving caselaw on the subject, and particularly our decision in *Kaziu*, compels a *de novo* resentencing. He contends that he has serious medical issues, has maintained a perfect disciplinary record, and does not pose a risk to the public, and that the district court should reassess his sentence for these reasons. He further argues that the court should resentence him because when he was originally sentenced, the Sentencing Guidelines were viewed as mandatory. Finally, he contends that he should be resentenced because he has new

information challenging the integrity of the Government's investigation of him and others.

We disagree. After considering this Court's recent caselaw on the issue, we consider Orena's various contentions.

## I. Peña and Kaziu

Two recent Second Circuit decisions lay the groundwork for our analysis here. In *Peña*, we rejected the argument that *de novo* resentencing is *always* required whenever a court vacates one or more of a defendant's convictions pursuant to a § 2255 petition. 58 F.4th at 618–19. Peña was convicted of five counts: conspiracy to commit murder for hire; substantive murder of two individuals for hire; and two counts of use of a firearm to commit murder, in violation of 18 U.S.C. §§ 2 and 924(j). *Id.* at 615–16. In light of *Davis*, the government consented to the vacatur of Peña's § 924(j) convictions, and the district court vacated those counts and the associated sentences. *Id.* at 617. However, the district court declined to conduct *de novo* resentencing because the vacatur would not impact the sentences for his other convictions, which carried mandatory terms of life imprisonment. *Id.*

We held that resentencing was not "mandatory" under these circumstances. *Id.* at 618. And we concluded that the district court did not abuse its discretion in declining to conduct *de novo* resentencing because resentencing would have been

14

"strictly ministerial" in light of the mandatory life sentences on the remaining, non-vacated counts. *Id.* at 623. We explicitly declined to define every "circumstance[] under which a district court abuses its discretion in denying *de novo* resentencing." *Id.* But we noted, "It may be that in most cases in which resentencing would not be strictly ministerial, a district court abuses its discretion when it denies *de novo* resentencing." *Id.*

In *Kaziu*, we were similarly asked to consider whether the district court exceeded its discretion by declining to conduct a *de novo* resentencing after some but not all counts were vacated. 108 F.4th at 91. The jury had found Kaziu guilty on four counts: conspiracy to commit murder in a foreign country, conspiracy to provide material support to terrorists, attempt to provide material support to a foreign terrorist organization, and conspiracy to use a firearm in a crime of violence under 18 U.S.C. §§ 924(c) and 924(o). *Id.* at 87–88. As in *Peña*, Kaziu's firearms-related conviction, for which he was sentenced to a term of imprisonment, was invalid in light of *Davis*. *Id.* at 88. Pursuant to Kaziu's petition under 28 U.S.C. § 2255, the district court vacated Kaziu's firearms-related conviction and associated sentence and reduced Kaziu's sentence on another count—but over Kaziu's objection it did so without conducting a *de novo* resentencing. *Id.* at 89–90.

On appeal, we recognized that our recent decision in *Peña* foreclosed the argument that "resentencing is categorically required whenever a conviction is vacated on collateral attack." *Id.* at 91. And we noted that *Peña* did not address the limits on a district court's discretion in choosing among remedies under § 2255(b), following vacatur of a count of conviction, in cases in which resentencing would not be "strictly ministerial." *Id.*

In assessing those limits, we identified two considerations that were particularly relevant in Kaziu's case. First, we recognized that the various counts of conviction collectively comprise the body of facts and convictions that drive a court's sentence. If one count of conviction is overturned, "the constellation of offenses of conviction has been changed and the factual mosaic related to those offenses that the district court must consult to determine the appropriate sentence is likely altered." *Id.* at 92 (quoting *United States v. Quintieri*, 306 F.3d 1217, 1227–28 (2d Cir. 2002)). And we recognized that concern "grows more sensitive" when the original sentencing judge, who knows the role that each count of conviction played in the overall "factual mosaic" underlying the sentence, is no longer present. *Id.* at 92–93. That was the case in *Kaziu*.

Second, we concluded that one factor that may be relevant to a court's discretion to decline to conduct a *de novo* resentencing is whether the defendant

plausibly asserts "changed circumstances that suggest that the original rationale underlying the sentence . . . no longer applies." *Id.* at 93. Kaziu argued "he is nonviolent, has reordered his relationship with Islam, and has positioned himself to be a productive member of society," reflecting "a foundational departure from the type of person Kaziu was when he was originally arrested, convicted, and sentenced." *Id.* at 93.

Given these two factors "in tandem," we concluded that the district court exceeded its discretion in declining to conduct a full, *de novo* resentencing after vacating the § 924(c) conviction. *Id.* at 94.

## II. Orena

This case adds a new wrinkle that changes the calculus. The *habeas* judge, while not the original judge, had just conducted the same analysis of the § 3553(a) factors considering most of the changed circumstances Orena relies on here, in the context of Orena's motion for sentence reduction under 18 U.S.C. § 3582. Moreover, for the reasons set forth below, on this record, the fact that he was originally sentenced at a time when the Sentencing Guidelines were viewed as mandatory does not compel resentencing now. And though Orena frames his arguments stemming from alleged government misconduct in its investigation of him and others as *new* information relevant to his *sentence*, most of these claims

17

have been previously adjudicated, and he fails to connect these arguments to his sentence as opposed to the underlying convictions.  We consider each of these conclusions in turn.

### A. The § 3582 Motion

True, resentencing would not be "strictly ministerial" for Orena like it was in *Peña*; he is not subject to statutory mandatory minimums on one or more of his remaining counts.  Thus, it is theoretically possible that on resentencing Orena could receive a lower sentence.  And Orena is right that the *habeas* judge, who declined Orena's request for *de novo* resentencing after striking the § 924(c) conviction, was not the original sentencing judge.  Plus, there are significant changed circumstances from Orena's original sentencing in 1992—Orena has serious health issues and requires assistance to meet even his basic needs.  He poses a minimum threat to others.

But Orena's argument that *Kaziu* is dispositive here ignores the critical fact that the would-be resentencing judge—Judge Komitee—is the same judge who had just considered and rejected Orena's sentence reduction motion on grounds that would be dispositive at a resentencing.  In the context of that § 3582 motion, the government did not dispute that Orena's medical decline constituted an exceptional circumstance potentially warranting sentence reduction.  As a

consequence, Judge Komitee's disposition of the § 3582 motion turned on his evaluation of the § 3553(a) sentencing factors. He concluded that Orena fell in a category of cases "in which the offenders' criminal history is so long, and their victims so numerous, that even serious health conditions do not suffice to merit relief." Gov't App'x 5. Judge Komitee explained that Orena "was a singular figure in the annals of the Colombo family" who oversaw "a campaign of violence that resulted in a swath of death and serious injury." *Id.* at 6. In addition to emphasizing the human toll, Judge Komitee invoked Judge Weinstein's estimate that the "direct and indirect costs" of organized crime "to the honest people of the [New York City] metropolitan area are measured in the billions of dollars." *Id.* at 8.

Judge Komitee acknowledged many of the factors Orena emphasizes here, including his "undeniably serious" medical issues, his activities in prison, and the Bureau of Prisons' determination that he poses a "minimum" risk for violence. *Id.* But the court was "left with the inescapable conclusion that any sentence short of the life term imposed by Judge Weinstein would insufficiently reflect the seriousness of the offense conduct here and fail to provide just punishment." *Id.*

If the *habeas* court—Judge Komitee presiding—were to conduct a *de novo* resentencing now, it would consider the same information and arguments and

19

would apply the same § 3553(a) factors to determine "a sentence sufficient, but not greater than necessary" to promote the purposes of sentencing. 18 U.S.C. § 3553(a). But he just did that. And he concluded that the factors Orena relies on do not warrant a lower sentence. The district court did not exceed its discretion in declining to repeat the exercise in a *de novo* resentencing proceeding. Under these unique facts, resentencing would have been "an empty formality." *Peña*, 58 F.4th at 623.

### B. Booker

One "changed circumstance" Orena identifies that the district court did *not* address in his sentence reduction motion is the fact that at the time of his original sentencing in 1993, the Sentencing Guidelines were mandatory, but they are now recognized as advisory. *See Booker*, 543 U.S. at 245 (holding that Sentencing Guidelines are advisory and not mandatory). He contends that the district court abused its discretion in declining to resentence in light of that fact.

Orena may well be right that it could be an abuse of discretion not to resentence where the sentencing judge may have felt bound by the Sentencing Guidelines calculation. *Cf. United States v. Fagans*, 406 F.3d 138, 142 (2d Cir. 2005) (on direct appeal, remanding for resentencing where defendant preserved objection to district court treating Guidelines as mandatory post-*Booker*); *United*

20

*States v. Crosby*, 397 F.3d 103, 119–20 (2d Cir. 2005) (on direct appeal, remanding

for consideration of whether to resentence where defendant did not preserve this

objection); *see also United States v. Russo*, 643 F. Supp. 3d 325, 333–34 (E.D.N.Y. 2022)

(concluding that, in context of motion for sentence reduction under 18 U.S.C.

§ 3582(c), the change in sentencing law brought about by *Booker* was a factor

supporting the conclusion that extraordinary and compelling reasons existed to

support sentence reduction).

But the record doesn't support the suggestion that the Sentencing

Guidelines were a driving force behind Orena's underlying sentence.  The *habeas*

court in this § 2255 action excerpted the following from Judge Weinstein's original

sentencing decision to drive the point home:

> The Guidelines are of little assistance in these cases. They focus
> myopically on mechanical aspects of the offenses. Their
> formulaic scheme fails to account for the overall picture of these
> defendants developed during three trials and in three thorough
> and exhaustive presentence reports. These criminals must be
> punished in the proper context of their lives and their overall
> actions, not in the vacuum of "units," "offense levels" and
> "adjustments" created by the Guidelines.

*Orena*, 2024 WL 1199901, at * 2 (quoting *Sessa*, 821 F. Supp. at 875).

Moreover, Judge Komitee's own conclusion that no reduction in Orena's

sentence was warranted was based on an assessment of the § 3553(a) factors, not

on Orena's underlying Guidelines calculation.  On this record, we cannot conclude

that the district court exceeded its discretion in declining to vacate the entirety of the pre-*Booker* sentence and conduct a full *de novo* resentencing.

### C. *Allegations Regarding the Government's Investigation*

In connection with Orena's motion for sentence reduction, the *habeas* court did *not* consider his claims that new evidence undermines the integrity of the government's investigation that led to Orena's conviction. The *habeas* court rightly concluded that these assertions were immaterial to a motion for sentence reduction under § 3582(c), and they could only be considered in the context of a petition for habeas relief. Gov't App'x 6 n.4; *Amato*, 48 F.4th at 65–66 (affirming denial of Orena's sentence reduction motion).

But, as noted above, in an effort to expedite the proceedings, Orena withdrew his § 2255 petition based on these allegations. Now he argues that the allegations bear not only on his *convictions*, but on his *sentence*, so the *habeas* court should conduct a full resentencing considering this information.

In particular, Orena points to allegedly new evidence of FBI corruption in connection with his prosecution which "undermines key sentencing conclusions Judge Weinstein came to in 1993." Appellant's Br. at 28. For example, Orena points to information, not disclosed by the government during his own prosecution, that a co-conspirator and key instigator of violence in the Colombo

22

Family internecine conflict, Gregory Scarpa, Sr., acted as a government informant and falsely attributed several murders with which he was involved to others. He further contends that the FBI agent who interfaced with Scarpa, Roy Lindley Devecchio, himself engaged in misconduct, including providing information to Scarpa that got people killed. Moreover, Orena points to information indicating that Frank Sparaco, one of the government's highest level confidential informants, told the government well before Orena's trial for the Ocera murder, that John Gotti, not Orena, had authorized the "hit" on Ocera. *Id.* at 36. In Orena's view, this information "undermines [the sentencing court's] findings as to uncharged and unproven relevant conduct," such that resentencing here is compelled. *Id.* at 30.

There are two problems with Orena's arguments. First, most of the "new" information is not new at all; it's been the subject of prior challenges to his convictions, including challenges decided by Judge Weinstein.

Second, although Orena says these allegations are relevant to his *sentence*, his arguments reveal that he in fact seeks to collaterally challenge his *convictions* by raising these arguments in a resentencing hearing, rather than challenging them directly in a § 2255 petition as he initially sought to do before he changed course. He fails to connect the government's claimed misconduct to his personal

23

culpability, and his arguments belie his claim that he seeks only to argue that his sentence, rather than his other convictions, are compromised by the government's investigation.

For example, Orena emphasizes that when juries in subsequent prosecutions of others implicated in the Colombo war were privy to information about the government's investigation they acquitted—facts that may speak to the materiality of the information for purposes of a *Brady* challenge, but do not mitigate Orena's culpability for sentencing purposes.

And he points to more recent information "that directly and completely undermines the integrity of the charge that Mr. Orena killed Thomas Ocera, the primary charge accounting for the life sentence." *Id.* at 35. This argument squarely challenges the underlying *convictions* on which Orena's sentence was based, not the sentence based on those convictions. And, as the district court recognized, resentencing is not the proper forum for collaterally attacking his other convictions. *Orena*, 2024 WL 1199901, at *3 (citing *Amato*, 48 F.4th at 63).

For these reasons, the district court did not exceed its discretion in concluding that Orena's allegations challenging the integrity of the government's investigation were really challenges to the validity of his convictions, which must be brought pursuant to 28 U.S.C. § 2255 or § 2241.

**CONCLUSION**

*Peña* left open more questions than it answered. The Court concluded in the context of a § 2255 petition leading to vacatur of a count of conviction and its associated sentence that the decision whether to conduct a *de novo* resentencing on the remaining counts falls within the district court's discretion. *Peña*, 58 F.4th at 620. But it expressly refrained from probing the limits of that discretion, and, in fact, observed, "It may be that in most cases in which resentencing would not be strictly ministerial, a district court abuses its discretion when it denies *de novo* resentencing." *Id.* at 623.

By its nature, discretion requires consideration of myriad factors and is not readily amenable to bright-line rules. The purposes of our sentencing laws guide the exercise of discretion here. *Cf. Application of Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993) (holding that district court's "exercise of discretion was properly guided by the purposes of the statute"). That includes ensuring that a defendant serves a sentence that is "sufficient, but not greater than necessary" to serve the sentencing purposes set forth in § 3553(a)(2), 18 U.S.C. § 3553(a), and recognizing that because "[a] criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent . . . a district court's original sentencing intent may

25

be undermined by altering one portion of the calculus," *Pepper v. United States*, 562 U.S. 476, 507 (2011).

This Court has had the opportunity to consider the impact on this discretionary decision of several factors: the fact that the would-be resentencing judge did not impose the original sentence, *Kaziu*, 108 F.4th at 92–93; changed circumstances since the original sentencing that potentially alter the applicability of various sentencing factors, *id.* at 93–94; and, now, the would-be resentencing judge's recent assessment and ruling on the application of the § 3553(a) sentencing factors in the context of a contemporaneous motion for sentence reduction. Future cases will no doubt highlight other factors that may affect the scope of a district court's discretion in particular cases.

It may be the case that "in most cases in which resentencing would not be strictly ministerial, a district court abuses its discretion when it denies *de novo* resentencing." *Peña,* 58 F.4th at 623. But on this record, for the above reasons, we conclude that the district court did not exceed the limits of its discretion in denying *de novo* resentencing. The district court's amended judgment is **AFFIRMED**.